Good morning, Your Honors, and may it please the Court. Your Honors, the linchpin of the decision below, defying Michael Tesh's authority of inequitable conduct, is the conclusion that he intentionally withheld from the patent and trademark office documents and deposition testimony of which he was aware. There are three undisputed facts which totally undermine this critical finding. First of all, it's undisputed that Mr. Teshker was relieved of his litigation responsibilities in February of 2000. It's undisputed that every fact, every document, every deposition that the district court found should have been disclosed happened after he was relieved of responsibility. Do we get to these points, Mr. Dunner? How do we get to these points, maybe? How do we get to reviewing the underlying matter of inequitable conduct? There seem to be a few procedural groups we have to go through first, don't we? There is a jurisdictional issue which we feel is resolved by the precision specialty metals case. In that case, the appeal was from an attorney who was found to have violated Rule 11. And there was no appeal on the merits by any other party. And this court relied on decisions in the First Circuit, Fifth Circuit, the Ninth Circuit to find that where there are explicit findings, where there are conclusions of law, that an attorney violated some rule of conduct, that the stigmatizing effect of that ruling, the potential for ultimate disciplinary action by bargainers, was such that there was an immediate appeal available to that attorney. That's exactly the situation we have in this case. There are explicit findings. There are conclusions of law. He was found to have violated Rule 56 of the Patent and Trademark Office. There's a stigmatizing effect that we think is obvious. OK, stigmatizing, and you used kind of in your opening phrase, I think, an interesting word, guilty. Have there been findings of guilt and stigmatization here by the court that are before us on appeal? Your Honor, the word, if I use the word guilt, it crept into my language. There was no specific finding of guilt. There was no specific finding of stigmatizing. There were no specific findings of guilt or stigmatizing in the First Circuit, the Fifth Circuit, and the Ninth Circuit cases. What happened in those cases is that an attorney was found responsible for violating their rule of conduct. And the court held, the courts, I should say, held, that the end result of that, whatever an attorney is found personally liable for violating Rule 56, for engaging in intentional intention to deceive the Patent and Trademark Office, I say implicit in that is a potential stigmatizing effect. You know, these cases, and there's a range of them, of course, from the Seventh Circuit's cases that say you actually have to have money taken out of your pocket in order to have a right to appeal, to, I guess, the Ninth Circuit's case, which you've described accurately. But the thing that Precision Nettles has that seems to me, at least potentially, to be missing here is that in Precision Nettles, there was a specific order to show cause on a contempt proceeding, which is directed at the attorney. The attorney had a due process hearing. And it was a one-on-one. The attorney was up there. The judge adjudicated the question of culpability, a violation of the rule. And that adjudication resulted in a formal reprimand. Now, the court, our court, talked about that formal reprimand as being the linchpin, if you will, of the right to proceed. This case strikes me as potentially being on the other side of that formal reprimand-type line, where what's happened here may have been critical language about the attorney. But I'm having a hard time distinguishing the critical language about the attorney, in this case, from what might occur in any case in which an attorney or an accountant or a doctor in a medical malpractice case was found to have engaged in serious misconduct. But that doctor is not a party to the action, was not specifically reprimanded or sanctioned, and therefore has no right to go up to the Court of Appeals, no matter how serious the charge or the language used by the court might be. Can you help me with defining where that line should be drawn? I hope so, Your Honor. The fact is that I think the case is all made clear, with the exception of the Seventh Circuit case, it doesn't have to be a monetary sanction. And the court in precision specialty metals went out, dealt with the Seventh Circuit case, and said that that case didn't have the benefit of the First, the Fifth, and the Ninth Circuit. Well, the Seventh Circuit more recently, and reaffirmed it's a monetary. Secondly, there was Mr. Tester, through my firm, did appear in the district court after the inequitable conduct order, filed a motion to intervene. And there's a separate basis for this court's jurisdiction on the intervention issue. We're just talking about the precision specialty metals case, which is not an intervention issue. It's independent of that. He participated, he filed a motion to amend, and for reconsideration, and a motion to intervene. But he did not participate in the actual proceedings when the case had not been decided, and he did not argue the point, or have the opportunity to argue the point. And timeliness was the problem with his later filing time. Well, on the intervention issue, which I'll address in a second, but I'm trying to respond to Judge Price's question. And that is, in the Ninth Circuit case, Nicias versus Talao, the court said, the district court in the present case did more than use words alone, or render routine judicial commentary. The case is distinguished from harsh commentary versus a judicial sanction or reprimand. It says, rather, the district court made a finding and reached a legal conclusion that Harris knowingly and willfully violated a specific rule of ethical conduct. Such a finding, per se, constitutes a sanction. Per se, constitutes a sanction. Now, in this case, while Mr. Teschner did not participate below, which means, if you disagree with me, we're going to have to get to the intervention point and the timing of this point raised by Judge Rader. Nevertheless, he was found in an order on, in the early part of the appendix, pages 80, 24, 25, 26, or what have you. The court issued an opinion in which it disagreed with Mr. Teschner. There was a one-on-one interface at that point between Mr. Teschner and the court. And we submit that under these cases, he doesn't have to have been a party to the case. Well, let me ask you then, how would you distinguish? So I think it's out of intervention for the moment. How would you distinguish Mr. Teschner's situation from that, for example, of a doctor in a medical malpractice case in which the doctor wasn't a party, a hospital was a party? But nonetheless, the court makes, writes an opinion saying, this is absolutely unprofessional conduct by this doctor, that the doctor engaged in all sorts of misconduct and therefore the hospital is liable. The doctor wasn't a party. The doctor can't appeal that, I take it. If the court made specific findings and legal conclusions applicable to the doctor and found that he violated some rule of conduct, such as Rule 56, well, even in that case, it would be a different rule. In that case, I submit the doctor would have standing to appeal under precision specialty metals, even though there were no monetary sanctions. Well, on what basis? What's the real book? Again, in precision, we had a direct judicial reprimand. What is the action here, other than the commentary that is necessary to resolve the issue of inequitable conduct? Other than that commentary, what is there that gives us a right to take up Mr. Teschner's concerns? You mean other than the intervention issue, which is a separate issue? Yeah, yeah. Well, let's come back to that. We'll come back to that. We're on Judge Johnson's point at the moment. I can do no better. There's a short paragraph in precision specialty metals that sums up the court's holding. I have a Westlaw version. It's on page 1352 of 315 Fifth Earth. And it basically says, the four divine decisions of the First, Fifth, and Ninth Circuits have a common theme. A trial court's reprimand of a lawyer is immediately appealable, even though the court has not imposed monetary or other sanctions upon the lawyer. This principle reflects the seriously adverse effect a judicial reprimand is likely to have upon a lawyer's reputation and status in the community and upon his career. On the other hand, judicial statements that criticize the lawyer, no matter how harshly, that are not accompanied by a sanction or findings are not directly appealable. Here, there were multiple findings that Mr. Teschner violated Rule 56. There was a legal conclusions supporting, according to the district court. I say that that language covers Mr. Teschner. And beyond that, the motion to intervene independently, I submit, gives this court jurisdiction. And I would like to address the timeliness issue raised by Judge Rader. Please do. We're just going to be too strict on the time, so you don't have to rush. Go ahead. OK. I notice there are no people in line. You're alone. This is one-on-one or one-on-three is the case. If I lose this case, I'll have difficulty explaining without an adversary. But nevertheless, I appreciate that, Your Honors. On the timeliness issue, the district court found that we could have proceeded earlier. And he relied on two cases. He relied on Linton, which is a Sixth Circuit case which governs, and he relied on Triax. And the Triax case, he said, involved a situation where the parties had indicated a disposition not to appeal it.  was the attorney. He said, that's not the case here. As it turns out, that is the case here, which is why I'm alone, because the parties have settled their disputes, leaving their dispute immune from appeal to this court. The Linton case was a case in which there's a statement in the court's opinion, Sixth Circuit opinion. The movements had no reason to intervene in the instant action so long as they believed that the TDHE and the trial court would protect their interests or until the district court adopted the 1990 state plan in its entirety. Now, that situation is parallel to the situation here. Mr. Teshner, during the proceedings, he testified at the trial. He had no reason to believe at that point that his interests, which at that point  would not be protected by Nisus's counsel when the opinion came out, and we submit, tacked on, if I had a chance, I'll get to that, tacked on Mr. Altea's conduct to Mr. Teshner's conduct to provide a joint conduct which then left Nisus guilty of violating Rule 56. He didn't know the court was going to do that. Moreover, the situation changed. Nine-tenths of the activities are Altea's activities. One-tenth or less were the activities of Mr. Teshner's activities. He no longer is protected. They settled. Nisus settled. Merchant and Gould settled. Altea settled. That didn't include Mr. Teshner. His interests are no longer being protected. He had no reason to know at an early date that he should intervene because if he had to intervene at that early date, then what you're saying is every time a lawyer is charged with inequitable conduct and typically it is lawyers who are charged with the conduct, that lawyer must intervene or face the danger that Mr. Teshner is in right now of having nobody to protect his interests on appeal. I suggest that that should not be the law. I suggest that is not the law. The timing of this issue here was satisfied because an appeal was filed within 10 days of the final judgment, within the same 10 days that post-trial motions were due. Nobody was prejudiced because the district court rendered all its decisions at the same time. And moreover, everything but the timing of this issue was reviewed de novo. And I suggest there is no prejudice. There's nobody to protect his interests. There are other factors involved, which the Sixth Circuit Law lists as a fourth factor, and that is the parties have all settled. So I suggest that intervention is proper, that the court shouldn't have let him intervene. He intervened at the earliest reasonable moment that he could have intervened. So I guess I have two problems to my argument. One is precision specialty metals and the accompanying cases in the First, Fifth, and Ninth Circuits. And secondly, I think the district court abused its discretion in refusing him the right to intervene. Of course, the two are, I suppose, related, at least to some extent, because, I mean, suppose we were in the Seventh Circuit just to make the matter crystal clear. I suppose there would be absolutely no justification for intervention under those circumstances. One would say, this is not a livable right that you have. And therefore, you're just a stranger to the party if you don't have a monetary judgment against you, which is a way of saying that if you don't have a separate right to appeal, you also don't have a right to intervene. Wouldn't that be right in the Seventh Circuit setting? Your Honor, if the Seventh Circuit stuck to its guns in the case cited in the precision specialty metals, the answer would be right. There's no monetary interest. And therefore, no right to intervene. Yes. But in this court, this court has distinguished the Seventh Circuit case and said, we don't know what it would rule, and we're not going to be bound by it. I understand. But what I'm saying is, aren't the two sort of in lockstep? That is to say, if the conclusion is that there is no separate right of appeal, doesn't that also lead us to the conclusion that there really isn't a separate right of intervention either on the merits of the intervention question? Your Honor, in the Seventh Circuit, that might be right. But I've been asked questions standing here today, what about the fact that he was not a party? And so to that extent, those two issues are different in the sense that if he intervened, he would be a party. Albeit a belated party, he would be from the equation. Returning for a minute to the precision question and your emphasis on the words or findings, if we would adopt your reading of or findings to mean that any time a court makes findings, those become the equivalent of a judicial reprimand and give independent rights to intervene and appeal, wouldn't that mean any time a witness was found incredible by the court and they made credibility findings, or any time a corporate executive's business decisions were questioned in a patent case, any situation where the court made findings that impugned someone's decision-making ability or motives, they would become a separate party and we'd have a separate appeal? Is that really what you want to argue to us? No, that's not only not what I don't want to argue it, and I hope I'm not arguing it. Well, how do you avoid getting there? The precision specialty metals case distinguishes between criticism and findings and conclusions. It distinguishes between them. But if the court makes the finding that witness was incredible, and then every witness will come in and say the court called me a liar, and it's greatly damaged my character and reputation, you can follow the reasoning from there. Especially if that finding was with respect to an expert witness. Your Honor, I don't think that's what the court means by findings. I don't think the court, because if that's what the court meant by findings, then a criticism where it says a criticism, no matter how harsh, that's not accompanied by a sanction. And sanction, I read to you before from the Ninth Circuit rule, per se, a finding and a legal conclusion that somebody knowingly and willfully violated a specific rule of ethical conduct is, per se, a sanction. So we have the Ninth Circuit defining what a sanction is. And we have the majority opinion, or they were in our dissent, so the opinion of precision specialty metals distinguishing between comments about harsh criticism. That is a finding, I put that in quotes, finding with a small f. It's a finding that somebody acted improperly. I don't think that's what the court meant. I think what the court means is formal findings. And in this case, they were formal findings. How are you distinguishing between formal findings and formal findings? I hate to rely on the Supreme Court's definition of pornography. We know it. But the fact is, I can tell you what's on one side of the fence. I can tell you what's on the other side of the fence. I'm not sure I can tell you exactly where the fence is. You're in a better position to define that than I am. But on one side of the fence is an opinion with 20, 30, 40 pages of numbered paragraphs, the kind of findings you find in findings of fact and conclusions of law, followed by that, coupled with the fact that what is involved is an ethical violation. To me, that clearly is on one side of the fence. What's on the other side of the fence is the example, the hypothetical you gave me, namely, where somebody says, Mr. Jones, I don't think you acted as a lawyer very well in this case. Or, Mr. Smith, I find your testimony not credible. That's not the kind of finding I'm talking about. Let me see if we can get close to figuring where the fence is here. Not in this area, obviously, but in the criminal law, a very common collateral attack on criminal convictions comes in the form of claims of ineffective assistance of counsel, which are frequently, probably more than half the time, accusing the trial counsel of having engaged in conduct that would clearly violate various ethical and professional standards that govern and can be, ultimately, the cause for bar proceedings against the individual. Sometimes courts find that those lawyers, in the course of their representation, behaved way below the minimum standards of competence and effective assistance. Would those lawyers be entitled, in your view, to appeal to participate separately in all of those cases in which courts found their conduct to be below the requisite standards? I would answer that question this way. I know judges do not like to hear, that is not this case. So that would be my second answer. I'm looking for that. I'm looking for a third answer. Because I don't want to be reprimanded. From which I will have no appeal. The fact is, I would think that is, my gut reaction says no. There's no appeal from that. The fact that somebody was slept through the proceeding. I was thinking of that very case. And therefore, obviously, provided ineffective counsel. Abandoned his client, which is sort of the worst defense a lawyer can give. I mean, it's difficult for me to believe that that's on our side of the line. It's difficult for me to believe. If the judge said, you had ineffective counsel, you slept through the case, and therefore, you have the right to appeal. If it is on our side of the line, it is a lot closer to that fence than our case is. I mean, we are at the extreme end of the spectrum. We have the ultimate formal findings, formal conclusions of law. You intentionally intended to deceive the examiners of Patent and Trademark Office. That is a really stigmatizing finding. The Office of Enrollment and Discipline, we had to self-report. And we have reported. And they have, it hasn't gone any place, because I think they're waiting for you to speak. Just as in the preceding case, the FAA is waiting for you to speak. In this case, they are waiting for this court to make a ruling to decide what to do. We have a, I mean, I've been myself involved in situations where people have accused me of this, that, or the other thing. It's a very troubling thing. If you've got any pride, if you spend your lifetime building a reputation, and somebody's charged you with something, that is really troubling. And so, when somebody says, you didn't provide effective counsel, that also is troubling. But it's certainly not in the same category. And there are no, unless you tell me the judge made formal findings and conclusions and censured the person, that might well be appealed. Now, the censure would fall, I guess, into the formal reprimand category. Outside of the Seventh Circuit, that would certainly. Yes, we're talking about outside. I think that that is analogous to harsh criticism. And my gut tells me that's not where we are. Let me ask you, you've raised a question in response that I'm going to explore. In Precision Medals, the lawyer in that case had, essentially, a due process hearing. There was, the judge issued the order to show cause, called her onto the carpet, and they had a hearing in which she was able to present her evidence, and the judge rejected her position. In this case, obviously, Mr. Teschner has not had a due process hearing of any sort, except through, at most, by privy. I mean, if he's subject to be in charge of having had this process his day in court, it's only because somebody, arguably, there's a party who's privy to it. But the basic rule is that you get an opportunity for due process or forced sanctions that are imposed against you. That doesn't apply in the case of criticism. And I wonder whether a place to draw the fence would be to say, if somebody is entitled to due process, either now or later, before any actual sanctions are visited upon them, that's the situation in which they get to appeal if a sanction is imposed. I don't know that there were the equivalent of a due process hearing, there was the equivalent of a due process hearing in the First, Fifth, and Ninth Circuit cases that we've talked about. In effect, we asked for the equivalent, not an oral hearing, but the equivalent of a due process hearing by moving to intervene and moving to amend. And the district court decided, denied our motion, at the same time denying our motion, he read what we wrote. And he changed, to some extent, not as much as we would like, he changed the opinion. So, to some extent, there was a hearing, it just wasn't a formal hearing, it wasn't a complete hearing, and he expressly declined, I have to acknowledge, he expressly declined to consider our paper. So, I don't think that's where I would draw the line. Now, I don't know whether I'd be overextending my welcome if I dealt with the merits, I don't. I'm, we do have the brief on the merits, and let me just say that your brief on that is very persuasive. Mr. Teshner's in a very difficult situation, having been pulled into a situation beyond, perhaps, any culpable conduct of his own. But I don't think we need to go into that, do you? I think what we have is a more procedural matter, and your brief on the other point is very persuasive. And I will adjourn for lunch. Thank you very much. Thank you, your Honor.